UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHAD SCHARF,

    Plaintiff,

v.                                          CASE NO. 3:23-cv-00633

BITWARDEN, INC.,               JURY TRIAL DEMANDED

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Chad Scharf makes the following allegations of religious discrimination and retaliation for his complaint against Defendant Bitwarden, Inc.

## INTRODUCTION

1. Chad Scharf was hired by Bitwarden in 2020, the same year Bitwarden was incorporated. Bitwarden is a premier provider of open source password management software.

2. Mr. Scharf joined Bitwarden in the early stages of Bitwarden's journey to become a very successful start-up. Mr. Scharf, the Vice President for Software Engineering, was an exemplary employee and well-liked.

3. At the beginning of 2021, Bitwarden began promoting the concept of "inclusivity" company-wide, which included strongly encouraging employees,

1

including Mr. Scharf, to list their pronouns on their "Slack" profile, a platform utilized for intracompany communication.

4. Mr. Scharf is Catholic; at the very core of his religion is the doctrine that God created man in his own image, and created them male and female. This has been a Catholic doctrine for over two thousand years. Mr. Scharf's religious beliefs are that there are only two sexes and that gender cannot be changed, chosen, or manipulated. When pressured by the company to add pronouns to his Slack profile, he chose those in conformity with his religious belief: "Assigned by God."

5. Bitwarden asked him to remove his preferred pronouns from his Slack profile, but Mr. Scharf explained that he chose these pronouns because of his religious beliefs, which would not allow him to be silent in the face of the contrary ideology being advanced and encouraged by Bitwarden. Mr. Scharf explained that he could not speak untruthfully and against his beliefs and that Bitwarden's policies and practices discriminated against his religion.

6. Bitwarden fired Mr. Scharf because he requested accommodation for his religious beliefs and because he raised objections to Bitwarden's "inclusivity" initiative. Bitwarden refused to tolerate Mr. Scharf's religious beliefs and practices, instead giving preference to beliefs that were in opposition to Mr. Scharf's beliefs.

7. Bitwarden thereby unlawfully discriminated and retaliated against Mr. Scharf in violation of Title VII.

## JURISDICTION AND VENUE

8. Mr. Scharf has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964, including filing a charge of religious discrimination and retaliation on August 29, 2022, with the Florida Commission on Human Relations, which was dual-filed with the Equal Employment Opportunity Commission ("EEOC"). Mr. Scharf received a determination of "No Cause" from the FCHR on February 24, 2023; such notice was the equivalent of a right to sue letter for Mr. Scarf's federal claims. This complaint is filed within the 90 day time period. Mr. Scharf's state law claims are currently under review by the Florida Department of Administrative Hearings. Mr. Scharf intends to amend his complaint to add state law claims if so permitted.

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Mr. Scharf asserts claims arising under federal statute.

10. This Court maintains personal jurisdiction over Defendant Bitwarden because Defendant's contacts with Florida and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

11. Defendant Bitwarden is subject to the provisions of Title VII because Bitwarden is engaged in commerce and employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. § 2000e(b).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1-2) because Defendant Bitwarden conducts business in this judicial district and a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district.

13. All conditions precedent have occurred or been performed.

## PARTIES

14. Plaintiff Chad Scharf is a former employee of Defendant Bitwarden and resides in St. Augustine, Florida.

15. Defendant Bitwarden is a Delaware corporation with a principal address located at 1 North Calle Cesar Chavez, Suite 102, Santa Barbara, CA 93103.

16. During the entire length of his employment, Mr. Scharf worked for Bitwarden out of his home office in St. Augustine, Florida.

## FACTS

**Mr. Scharf was a Competent and Successful Senior Vice President**

17. Mr. Scharf started managing a small team at Bitwarden that eventually grew to eighteen people. He supervised fifty-one people total. Mr. Scharf was paid a base salary and compensation in the form of an options agreement.

18. Mr. Scharf was very good at his job and, until, he voiced his religious beliefs, never had any issues at work. His employment record was stellar. He never had any negative feedback regarding his job performance or inter-personal relations with his colleagues.

19. Mr. Scharf was well-liked and respected not only by his team but by others in the company.

20. His department consistently came back with the highest ratings after the company's yearly "passion and trust" survey.

### Bitwarden Promoted "Inclusivity" and "Gender Ideology"

21. Bitwarden began an "inclusivity" campaign and promoted the concept of gender ideology around February 2021, including a strong request for all employees to display their "preferred pronouns" in a field labeled "pronouns" on their Slack profile.

22. Mr. Scharf was repeatedly requested to enter his own "preferred pronouns."

23. Mr. Scharf thus chose pronouns that conformed to and communicated his religious beliefs: "Assigned by God."

24. In March 2021, Bitwarden's Human Resources Department asked Mr. Scharf to remove his pronouns and informed Mr. Scharf that he could keep his faith at work but not show it.

25. Mr. Scharf explained that Bitwarden's "inclusivity" agenda violated his beliefs, because the inclusion of certain ideologies was contrary to his religious beliefs. Mr. Scharf informed Bitwarden HR that because it was promoting beliefs contrary to his religious beliefs, he could not practice his religion by remaining silent about the issues being promoted at work. Bitwarden asked him four times to remove "Assigned by God," but Mr. Scharf stated that it would violate his religious beliefs to do so.

26.     Bitwarden continued to support and promote the positions and ideologies that Mr. Scharf explained were in direct opposition to his religious beliefs.

27.     Mr. Scharf continued to engage in discussions with HR. Upon HR's invitation, he actively participated on a committee regarding the topic of "inclusion" and provided ideas for how Bitwarden could alter its approach to "inclusion" in order to be truly inclusive of all beliefs, religions, and creeds.

28.     Mr. Scharf explained to HR and Bitwarden's CEO Michael Crandell how their actions, practices, and policies were discriminatory.

29.     Mr. Scharf also wrote a letter CEO Michael Crandell setting forth why he could not set aside his Catholic beliefs while at work.

### Bitwarden Terminated Mr. Scharf's Employment

30.     In August 2022, Bitwarden HR contacted Mr. Scharf to again ask him to remove his preferred pronouns, "Assigned by God." HR said that two employees felt "harassed" by the religious statement.

31.     That same week, Bitwarden tasked Mr. Scharf with interviewing a potential employee whose "preferred pronouns" were in contradiction to Mr. Scharf's religious beliefs. Mr. Scharf conducted the interview in a professional and respectful manner, avoiding the use of pronouns all together. Mr. Scharf assessed the interviewee favorably and recommended that the interviewee advance to the next stage of the interview process. Because of Mr. Scharf's religious beliefs, in his notes regarding the interview, which were shared internally and *not* with the interviewee, Mr. Scharf did not use the interviewee's requested pronouns.

32. CEO Michael Crandell contacted Mr. Scharf to inquire why he had not used the requested pronouns in the interview notes; Mr. Scharf explained that to do so would violate his religious convictions.

33. CEO Crandell then informed Mr. Scharf that he had contacted three attorneys, each of whom informed Crandell that he was legally entitled to fire Mr. Scharf because of Mr. Scharf's refusal to use pronouns that violated his religious beliefs.

34. In the end, Bitwarden confirmed that it was "inclusive" of certain beliefs and exclusive of Mr. Scharf's religious beliefs when it terminated his employment.

35. Mr. Scharf has retained Campbell Trohn Tamayo & Aranda, P.A. to represent him in this litigation and has agreed to pay a reasonable fee for the firm's services.

**Count I: Religious Discrimination (Disparate Treatment) in Violation of Title VII**

36. Plaintiff Chad Scharf restates and re-alleges the allegations of paragraphs 1 through 35 above.

37. Defendant Bitwarden is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

38. Mr. Scharf is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

39. Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or his] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

40. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

41. The Equal Employment Opportunity Commission defines "religious practices" to "include all moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

42. "[R]eligious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015).

43. Defendant Bitwarden violated Title VII when it terminated Mr. Scharf because of his sincerely held religious beliefs and failed to provide him a reasonable religious accommodation.

44. Mr. Scharf is Catholic and holds a sincerely held religious belief that prevented him from implicitly consenting to Bitwarden's adoption and promotion of "inclusivity," and more specifically, gender ideology, as a company moral and ethical system.

45. Mr. Scharf was an outstanding employee.

46. Acquiescence with Bitwarden's "inclusivity" campaign and gender ideology beliefs was a condition of his continued employment.

47. Mr. Scharf informed Defendant Bitwarden of his Catholic beliefs and requested that either he be permitted to keep his "Assigned by God" pronouns or for Bitwarden to forego its promotion of gender ideology.

48. Defendant Bitwarden could have simply granted Mr. Scharf's request to keep his chosen pronouns or for Bitwarden to stop promoting ideologies that were offensive to his religious beliefs; however, Defendant Bitwarden refused Mr. Scharf's request for accommodation.

49. Defendant Bitwarden offered no accommodation for Mr. Scharf's religious beliefs and instead terminated his employment.

50. In contrast, Defendant Bitwarden allowed other employees to post their chosen, non-religious pronouns.

51. Denying an accommodation because it is religious constitutes disparate treatment discrimination in violation of Title VII.

52. Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

53. Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

54. If Mr. Scharf had set aside his religious beliefs and acquiesced to Bitwarden's promotion of gender ideology, Defendant Bitwarden would not have fired Mr. Scharf. Thus, religion was a but-for cause of his termination.

55. In the alternative, religion was a motivating factor in Mr. Scharf's termination.

56. Mr. Scharf's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

57. Title VII prohibits Defendant Bitwarden from scrutinizing what Defendant believes to be the sincerity of Mr. Scharf's religious belief.

58. Title VII also prohibits Defendant Bitwarden from scrutinizing whether Mr. Scharf's exercise of his beliefs is logical or as consistent as Defendant Bitwarden believes they should be.

59. As a direct result of Defendant Bitwarden's discriminatory acts, Mr. Scharf suffered a loss of employment, loss of income and stock options, loss of seniority, loss of healthcare benefits, distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

60. Defendant has engaged in discriminatory practices with malice and reckless indifference to Mr. Scharf's federally-protected rights, thereby entitling his to punitive damages.

**Count II: Religious Discrimination (Disparate Impact) in Violation of Title VII**

61. Plaintiff Chad Scharf restates and re-alleges the allegations of paragraphs 1 through 35 above.

62. Defendant Bitwarden is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

63. Mr. Scharf is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

64. Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2); *see also* 42 U.S.C. § 2000e-2(k).

65. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

66. Mr. Scharf has a sincerely held religious belief that prevented him from being silent and acquiescing to gender ideology. Mr. Scharf's beliefs arise under Christianity.

67. Mr. Scharf was a valued employee. No complaints were ever raised about his performance.

68. Conforming to Bitwarden's "inclusivity" and "gender ideology" agenda was a condition of Mr. Scharf's continued employment.

69. Bitwarden adversely classified religious employees like Mr. Scharf who hold strong beliefs that there are only two sexes, and that each person's sex is assigned by God and cannot be changed or selected.

70. Bitwarden's gender ideology policy had the most disproportionate and adverse effects on employees with strong beliefs regarding the source and nature of being male or female and thus on Catholic and Christian employees such as Mr. Scharf.

71. Defendant Bitwarden violated Title VII when it placed Mr. Scharf into a disfavored class by promoting its gender ideology, when it failed to approve his reasonable request for accommodation, and when it terminated his employment.

72. Mr. Scharf informed Defendant Bitwarden how its agenda was not inclusive of his beliefs; however, Defendant Bitwarden found Mr. Scharf's religious beliefs distasteful and intolerable.

73. Defendant Bitwarden refused to accommodate Mr. Scharf's religious beliefs; apparently the only way Bitwarden would have permitted Mr. Scharf to continue working at Bitwarden is if Mr. Scharf abandoned the practice of his religion while at work.

74. In contrast, Defendant Bitwarden permitted employees who did not share Mr. Scharf's religious beliefs to choose and list their pronouns and to engage in behavior and speech at work that offended Mr. Scharf's religious beliefs.

75. That is, Bitwarden permitted other employees to indicate their "preferred pronouns" on their Slack profile but refused to allow Mr. Scharf to keep his "preferred pronouns" because they were of a religious nature. Bitwarden supplied no reason to Mr. Scharf when he asked the basis for this disparity.

76. Instead, Bitwarden characterized Mr. Scharf's expressing of his religious beliefs and his refusal to make statements that were contrary to his religious beliefs as *workplace harassment*.

77. Granting accommodations for non-religious reasons and denying accommodations for religious reasons constitutes religious discrimination in violation of Title VII.

78. Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

79. Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

80. Despite the existence of alternatives with lesser discriminatory effects, Mr. Scharf was terminated after he refused to conform to Defendant Bitwarden's position on gender ideology.

81. Mr. Scharf's termination was in violation of Title VII of the Civil Rights Act, which prohibits discrimination on the basis of religion. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

82. Title VII prohibits Defendant Bitwarden from scrutinizing the sincerity, logic, or consistency of Mr. Scharf's religious beliefs.

83. As a direct result of Bitwarden's discriminatory policies, Mr. Scharf lost his employment, income, future income growth, and seniority; Mr. Scharf also suffered distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

## Count III: Retaliation in Violation of Title VII

84. Plaintiff Chad Scharf restates and re-alleges the allegations of paragraphs 1 through 35 above.

85. Defendant Bitwarden is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

86. Mr. Scharf is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

87. Under Title VII, it is an unlawful employment practice for an employer to "discriminate against" an employee because he "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a).

88. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

89. Defendant Bitwarden placed pressure on all employees to adhere to its promotion of gender ideology.

90. Mr. Scharf has a sincerely held religious belief that prevented him from acquiescing in Bitwarden's choice to promote gender ideology. Mr. Scharf's beliefs arise under Christianity.

91. Mr. Scharf was an outstanding employee and valued member of his team. No complaints were ever raised about his performance.

92. Mr. Scharf requested to be able to continue using his chosen pronouns and articulated to Bitwarden how its concept of "inclusivity" was necessarily discriminatory towards religious employees such as Mr. Scharf.

93. Defendant Bitwarden retaliated against Mr. Scharf for requesting religious accommodation, for speaking out against Bitwarden's adoption of "inclusivity" as its core policy that was not inclusive of his religious beliefs, and for articulating why from Defendant Bitwarden's promotion of "inclusivity" and gender ideology was discriminatory.

94. Defendant Bitwarden violated Title VII when it criticized Mr. Scharf's religious beliefs and terminated Mr. Scharf's employment in retaliation for requesting religious accommodation.

95. In contrast, Defendant Bitwarden permitted employees to take positions and make statements declaring their beliefs on gender ideology as long as those beliefs and positions were non-religious.

96. Title VII demands more than "mere neutrality with regard to religious practices," requiring instead "favored treatment, affirmatively obligating employers not

to 'fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.' " *Abercrombie*, 575 U.S. at 775.

97. Employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

98. Mr. Scharf's termination was in violation of Title VII of the Civil Rights Act, which prohibits retaliation after an employee engages in protected activity. The Act further requires covered employers to provide reasonable accommodation to an employee's sincerely held religious beliefs. § 2000e(j).

99. Title VII prohibits Defendant Bitwarden from scrutinizing what Defendant believes to be the sincerity of Mr. Scharf's religious belief.

100. Instead of providing the readily available and reasonable accommodation requested by Mr. Scharf, Defendant Bitwarden rejected Mr. Scharf's request and instead terminated him for articulating his religious beliefs and requesting that his religious beliefs be included and accommodated.

101. As a direct result of Defendant Bitwarden's retaliatory and discriminatory acts, Mr. Scharf lost his employment, income, future stock options, and seniority; he also suffered distress, embarrassment, inconvenience, invasion of privacy, and humiliation.

102. Defendant has engaged in retaliatory practices with malice and reckless indifference to Mr. Scharf's federally-protected rights, thereby entitling him to punitive damages.

### PRAYER FOR RELIEF

**WHISEFORE**, Plaintiff Chad Scharf requests that this Honorable Court:

a. Enter judgment requiring Defendant Bitwarden, Inc. to pay back wages and back benefits found to be due and owing at the time of trial; front-pay and/or reinstatement; stock options; compensatory damages, including emotional distress damages, in an amount to be proved at trial; punitive damages; and pre and post-judgment interest thereon;

b. Grant Plaintiff Chad Scharf his costs and an award of reasonable attorneys' fees; and

c. Award any and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff Chad Scharf requests a trial by jury on all issues so triable.

Respectfully submitted May 25, 2023.

    CAMPBELL TROHN
    TAMAYO & ARANDA, P.A.

    /s/ Jennifer M. Vasquez
    Jennifer M. Vasquez
    Fla. Bar No. 71942
    Robert Aranda

        Fla. Bar No. 988324
P.O. Box 2369
Lakeland, FL 33806
Tel: (863) 686-0043
Fax: (863) 616-1445
j.vasquez@cttalaw.com
r.aranda@cttalaw.com

***Attorneys for Plaintiff Chad Scharf***