**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CHAD SCHARF,**

      **Plaintiff,**                         **Case No. 3:23-cv-633-BJD-MCR**

**v.**

**BITWARDEN, INC.,**

      **Defendant.**

_____/

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendant, Bitwarden, Inc. ("Bitwarden"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 26(c), respectfully moves for Protective Order to barring Plaintiff, Chad Scharf, from seeking and obtaining discovery in this litigation relating to Bitwarden's stock options or shares and Plaintiff's alleged stock option damages, including without limitation, stock/share valuations, funding, equity transactions, "Series B funding", or any type of financing that involves transactions regarding equity in or of the company, or any valuation of such equity, as all such information is exclusively within the scope of the parties' agreement to arbitrate contained in Plaintiff's Stock Option Agreement (*See* **Exhibit A**) and expressly reserved for arbitration pursuant to Bitwarden's contemporaneously filed Renewed Motion to Compel Arbitration and Stay Proceedings ("Renewed Motion to Compel") (Doc. 44), and as supported by the Arbitrator's Ruling on Arbitrability (*See* **Exhibit B**). In support thereof, Bitwarden states as follows.

I.    **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

The allegations in Plaintiff's Complaint, and consequently, this lawsuit, are new to this Court, but the issues are far from new to the parties, and most importantly to Plaintiff. The parties thoroughly litigated all of the same issues and claims now raised in Plaintiff's Amended Complaint before the Florida Division of Administrative Hearings ("DOAH") which ultimately affirmed the Florida Commission on Human Relations' ("FCHR") "no reasonable cause" determination in favor of Defendant.

A.    **Plaintiff Fully Litigated this Case at the Administrative Level.**

Following the FCHR's "no reasonable cause" determination in Bitwarden's favor on February 24, 2023, Plaintiff filed his Petition for Relief with DOAH on or about March 31, 2023. The Parties then had a Final Hearing before an Administrative Law Judge ("ALJ"), where testimony was provided by a multitude of witnesses, including Plaintiff. During the DOAH proceeding, the Parties had opportunities for discovery and exchanged documents. In addition to witness testimony, the Parties each had numerous exhibits submitted and accepted into evidence. The ALJ then duly considered all of the testimony and evidence in the record and issued a Recommended Order to the FCHR that Plaintiff's claims raised in the Petition—the same claims in this action—lacked merit and that its No Cause Determination be made final.

On November 16, 2023, the FCHR issued its Final Order, adopting the ALJ's findings of fact and conclusions of law, and dismissing Plaintiff's Petition with prejudice. The FCHR's Final Order also provided Plaintiff with a "Notice of Appeal Rights," instructing that Plaintiff had a right to appeal to the appropriate Florida

District Court of Appeal within thirty days. However, with the obvious intent to obtain a second bite at an already eaten apple and drive up the costs of this matter to Bitwarden, Plaintiff initiated the instant action on May 25, 2023 (Doc. 1).

On July 24, 2023, Bitwarden filed its Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel Arbitration") (Doc. 8), and, following Plaintiff's Response thereto (Doc. 11), Bitwarden's Reply (Doc. 17), U.S. Magistrate Judge Monte C. Richardson issued his Report and Recommendation that this Court grant the Motion to Compel Arbitration in full, and, on March 29, 2024, after Plaintiff had the opportunity to object to Magistrate Judge Richardson's Report and Recommendation, the Court entered its Order Overruling Plaintiff's Objections, Adopting the Report and Recommendation as an Order of the Court, and Granting the Motion to Compel Arbitration ("Prior Order") (Doc. 25).

### B.    After Plaintiff Filed the Instant Action, Defendant Moved to Compel Arbitration.

Following the Prior Order, Plaintiff commenced arbitration, as required, on July 29, 2024. After briefing the threshold issue of arbitrability before the Arbitrator, the Arbitrator issued his Ruling re Arbitrability on December 1, 2024. (*See* **Ex. B**). In short, the Arbitrator found that "the substantive issues of the employment case . . . must be returned to federal district court for determination on the merits *except* for the . . . question of Mr. Scharf's right to restoration of the [stock options] . . . as the . . . question of one's entitlement to [stock options] is within a fair reading of the Stock option Agreement [sic]." (**Ex. B** at. p. 3) (emphasis added). Two days after receiving

3

the Ruling Re Arbitrability, on December 3, 2024, Plaintiff filed his Motion to Re-Open Case and File Amended Complaint ("Motion to Re-Open") (Doc. 28), and the Court granted Plaintiff's Motion to Re-Open on February 24, 2025 (Doc. 37). Plaintiff filed his two-count Amended Complaint on February 14, 2025, and Defendant filed its Answer on March 21, 2025.

On February 21, 2025, the parties filed their Uniform Case Management Report, wherein Bitwarden requested a preliminary pretrial conference to discuss the issues now raised in this Motion. (*See* Doc. 34 at 4). Specifically, Bitwarden requested that the parties discuss with the Court limiting the scope of discovery in this case in light of its procedural history, and limiting discovery "because Plaintiff agreed to waive his right to litigate in a judicial forum regarding issues arising out of his Stock Options Agreement." (*Id.* at 4, 5). The parties have not yet been heard at a preliminary pretrial conference on the issues raised in the Case Management Report.

### C. Plaintiff Has Served Broad Discovery Requests That Encompass Information Covered Exclusively by the Applicable Arbitration Agreement, and Which is Otherwise Irrelevant to this Lawsuit.

On March 28, 2025, Plaintiff served his First Request to Produce to Defendant ("RFPs") (**Exhibit C**) and his First Set of Interrogatories to Bitwarden ("Interrogatories") (**Exhibit D**). In both Plaintiff's Interrogatories and RFPs, he openly seeks discovery relating to "stock options" including what Plaintiff describes as Bitwarden's "Series B Financing," which he broadly defines as "any funding round, capital raise, investment, or financing activity designated as 'Series B.'" (**Ex. C** at p. 2, ¶5; **Ex. D** at p. 2). In light of the clear and unambiguous terms of the Stock Option

Agreement's arbitration provision, requiring Plaintiff to submit to arbitration "any dispute arising out of or relating to the Plan or this Stock Option, this Agreement, or the breach, termination or validity of the Plan, this Stock Option, this Agreement . . . ." (**Ex. A** at p.5, ¶7(a)), and the Arbitrator's Ruling Re Arbitrability finding that "the . . . question of Mr. Scharf's right to restoration of the [stock options]" and the "question of one's entitlement to [stock options] is within a fair reading of the Stock option Agreement [sic]" (**Ex. B** at p. 3), Bitwarden—a privately held corporation—must be protected from having to respond to discovery directed at stock options, share and equity valuations, and "Series B" funding because such information, or any type of information concerning Bitwarden's shares, equity, funding, or financing, or any valuation regarding the same, is exclusively within the scope of the parties' Stock Option Agreement and not within the jurisdictional purview of this action.

Further, when conferring over the phone with counsel for Plaintiff, Jennifer M. Vasquez, Esq., on the relief sought in this Motion under Local Rule 3.01(g), Ms. Vasquez effectively conceded that the discovery requests now at issue bear no relevance to the claims alleged in Plaintiff's Amended Complaint, and that the requests effectively constitute an impermissible fishing expedition. Indeed, Plaintiff's counsel was not able to articulate how or why the requests and interrogatories at issue may be relevant to Plaintiff's employment law claims or unrelated to Plaintiff's stock options and purported stock option damages, and instead suggested that the discovery at issue is merely being attempted to see if there is "anything" there to even conduct discovery on. Moreover, even after being confronted with this fact for *a second time* when the

undersigned conducted follow up conferral prior to filing this Motion, again with no explanation, Plaintiff still opposes the instant Motion. Therefore, Plaintiff is unable to draw any logical correlation between the Series B Financing-related discovery requests *vis-à-vis* Bitwarden's reasoning or decision making process behind allegedly terminating Plaintiff, or any other allegation in the Amended Complaint. Thus, in short, an entry of a protective order is appropriate.

## II.    APPLICABLE LEGAL PRINCIPLES

Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding "any nonprivileged matter that is ***relevant*** to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, ***the parties' relative access to relevant information***, the parties' resources, ***the importance of the discovery in resolving the issues***, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit***." Fed. R. Civ. P. 26(b)(1) (emphasis added). Discovery requests are relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

Further, Federal Rule of Civil Procedure 26(c) states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;

. . .

    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters

Fed. R. Civ. P. 26(c).

Notably, Rule 26(b)(1) was amended in 2015 to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee Notes (2015). Thus, "[a] district court has broad discretion when fashioning protective orders." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987).

Indeed, "[d]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Storves v. Island Water Assoc.*, No. 2:10-cv-274-FtM-36SPC, 2011 U.S. Dist. LEXIS 52979 at *3 (M.D. Fla. May 6, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Plaintiff cannot go on a far-reaching fishing expedition on the "vague possibility that loose and sweeping discovery might turn up something suggesting that the [adverse action] was discriminatorily motivated[.]" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990)). For example, while the standard of relevancy in discovery is a liberal one, "it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so.'" *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. Aug. 9, 2010) (quoting *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997)).

## III.    ARGUMENT

### A.    Plaintiff's Broad Discovery Requests Directed at Series B Funding Amount to Nothing More Than an Impermissible Fishing Expedition.

The Court should enter an order relieving Bitwarden of its obligation to respond to and precluding Plaintiff from further propounding or inquiring into (either via written discovery, deposition, or otherwise) discovery directed at or pertaining to Bitwarden's "Series B" or other equity (i.e., stock) related transactions or events. On March 28, 2025, Plaintiff propounded the following Interrogatories and RFPs now at issue:

<u>**RFPs**</u>

12. Any documents prepared that mention or refer to Chad Scharf in conjunction with Series B Financing.

13. All presentations, pitches, prospectuses, or information packets prepared for potential investors as part of Series B Funding that mention or reference Chad Scharf.

14. All documents related to your assessment of potential liabilities, including employment disputes or litigation, prepared in connection with Series B Funding.

15. All communications with investors, venture capital firms, or other funding sources regarding DEI-related topics during Bitwarden's Series B Funding process.

(**Ex. C** at pp.3–4).

<u>**INTERROGATORIES**</u>

9. Identify all investors, venture capital firms, or funding sources involved in your Series B Financing, and for each such entity, state whether they were informed about Chad Scharf's separation from employment.

10. Describe in detail how, if at all, Chad Scharf's termination or any related employment disputes were discussed or addressed during the Series B Financing process.

11. Identify all documents related to your Series B Financing that mention Chad Scharf or any employment disputes.

12. Identify all persons involved in preparing materials for your Series B Financing who were aware of Chad Scharf's separation from employment.

13. Describe in detail any discussions or concerns raised by investors or potential investors regarding Chad Scharf's termination or any related employment disputes during the Series B Financing process.

18. Describe in detail any communications between your company and any third parties (in-cluding investors, customers, or business partners) regarding Chad Scharf's separation from employment or any related employment disputes.

(**Ex. D** at pp. 4–5).

Put simply, Bitwarden's participation in a Series B Financing process is not germane or relevant to the issue of whether it unlawfully discriminated or retaliated against Plaintiff based on his religious beliefs, and it is difficult, if not impossible, to imagine how Plaintiff might argue otherwise. A straightforward review of the pleadings makes readily apparent that Series B Financing, and consequently, discovery related thereto, is not at issue in this litigation or relevant to his Title VII claims and the scope of non-stock option damages that are otherwise available under Title VII. Indeed, both Plaintiff's initial Complaint (Doc. 1) and Amended Complaint (Doc. 30) are entirely devoid of any allegation mentioning, or even alluding to, Series B

Financing. Moreover, Plaintiff is entirely unable to explain, without resorting to pure speculation and conjecture, how the Series B information may somehow help him prove that Bitwarden unlawfully discriminated or retaliated against him. With absolutely no basis therefor, Plaintiff attempts to qualify or limit his overbroad and irrelevant discovery requests by requesting information or documents submitted that mention or refer to "Chad Scharf" or "DEI." These qualifiers only masquerade as "limitations" when, in fact, the discovery at issue purports to seek wholesale, unbridled discovery of Bitwarden's business and financial strategies, the monetary and non-monetary value of the company, as well as confidential, personally identifying and financial information of third-persons and non-parties to this litigation.

If Plaintiff had a legitimate, non-hypothetical reason to believe that Bitwarden's Series B Financing process would reveal evidence relevant to the actionable claims and non-stock option related damages at issue in this judicial proceeding, he could have stated so in either of his two complaints—yet he did not, which is telling. Thus, all of these requests appear calculated to enable Plaintiff fishing for information that he has no legitimate basis to suspect will produce material relevant to his claims.

To the extent that Plaintiff argues in response that the information requested is relevant to Plaintiff's request for punitive or other damages, Plaintiff has failed to propound any discovery requests even remotely similar to the limited type of financial discovery permitted in similar cases. Normally, a party's finances, if relevant to disputed issues of the underlying action, such as in the case of punitive damages, are not excepted from discovery under the rule of relevancy. *See EEOC v. Qualtool, Inc.,*

No. 5:21-cv-229-ACC-PRL, 2022 U.S. Dist. LEXIS 208176, at *26–27 (M.D. Fla. Nov. 16, 2022). However, discovery in such cases is limited to "current financial information" such as "tax records." *Id.* The above discovery requested as to Bitwarden's Series B Financing goes far beyond its current financial situation and tax records, and has no relation or relevance to (reasonable or otherwise) questions/issues of liability and non-stock option related damages. For example, disclosure of Series B Financing documentation effectively requires Bitwarden to reveal in this forum, as opposed to in confidential arbitration, the value of certain stock classifications at the time the Series B Financing transaction occurred. However, the value of such stock has no relation to Plaintiff's action or the stock options he previously exercised during his employment, or the stock options he failed to exercise within his contractual time period. Even if Plaintiff was employed with Defendant at the time of its Series B Financing in 2022, the transaction still would not have had any effect on Plaintiff, the value of his existing shares, or the terms or valuation of his stock options. Nevertheless, to the extent Plaintiff contends that the Series B Financing could be potentially relevant to him or this claims, it would necessarily arise out of, and otherwise be related to, his stock options and claim for stock-option related damages—all of which is exclusively encompassed by the scope of the parties' arbitration agreement and reserved for arbitration after the ultimate conclusion of this case, and even then, only if Bitwarden is found liable. *See generally* **Ex. B**.

Importantly, Bitwarden is not requesting the Court order that Plaintiff not be permitted to propound relevant discovery. Rather, Bitwarden is requesting that the

Court order that Plaintiff's inquiry into such matters be limited to non-arbitrable, relevant, and proportional information. The above discovery requests, which are all qualified by the term "Series B Financing," which Plaintiff broadly defines as "any funding round, capital raise, investment, or financing activity designated as 'Series B'" (*see, e.g.,* **Ex. C** at 2), are wholly irrelevant to the allegations in the Amended Complaint and constitute an impermissible fishing expedition. And to the extent Plaintiff attempts to argue otherwise, the only cognizable arguments he can make arise out of, stem from, and otherwise relate to, stock options and his pursuit of stock option damages; all of which is beyond the jurisdictional and relevant scope of the claims and issues in this litigation. Therefore, good cause exists for a protective order relieving Bitwarden from its obligation to respond to these discovery requests.

> **B.** **Good Cause Exists for a Protective Order Forbidding Discovery on All Matters Relating to Stock Options or Equity in Bitwarden Because Those Issues Have Been Duly Reserved for Arbitration.**

Bitwarden's contemporaneously filed Renewed Motion to Compel warrants a protective order as to any matter related to stock options, such as financial and other data submitted by Bitwarden to obtain Series B funding, because such data naturally involves equity in, or of, the company; therefore, it falls within the purview of the parties' arbitration agreement. In this instance, the grounds for entering a protective order as to discovery directed at stock options damages is akin to that of a stay of discovery, and the legal principles for granting a stay are applicable here in addition to those of Rule 26(c). For example, the "party seeking the stay must prove good cause and reasonableness." *Anderson v. Bullard*, No. 8:18-cv-901-T-35AAS, 2018 U.S. Dist.

LEXIS 193159, at *2 (M.D. Fla. Nov. 13, 2018) (citing *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No. 7:08-CV-32-HL, 2008 U.S. Dist. LEXIS 80216, at *3 (M.D. Ga. Oct. 10, 2008)) (granting motion to stay discovery based on pending motion to dismiss citing lack of personal jurisdiction). "In reviewing such facial challenges, a court must take a 'preliminary peek at the merits of the dispositive motion to assess the likelihood that such motion will be granted.'" *Id.* "To determine whether a stay is appropriate, the Court must conduct a balancing test." *Id.* "It must weigh 'the harm produced by the delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery.'" *Id.* When considering these factors, in addition to those set forth in Federal Rule of Civil Procedure 26(c), good cause exists to grant this Motion.

Here, the likelihood of success of the Renewed Motion to Compel is high given this Court's Prior Order and that Plaintiff's claim for stock option damages were found arbitrable by an arbitrator. (**Ex. B** at 3). Importantly, allowing discovery as to stock options in a judicial forum, as opposed to arbitration, would be inconsistent with the parties' agreement and inconsistent with Bitwarden's rights under the agreement to keep such information confidential. It follows that allowing discovery to proceed as to stock options, including shares Plaintiff purchased or could have purchased under the terms of his Stock Option Agreement and Bitwarden's Stock Option Plan, would be futile and a waste of the parties' and the Court's resources. This relief will not prejudice either party and will only further the interests of judicial economy. Moreover, Plaintiff will not be prejudiced by being precluded from propounding discovery in this forum

arising out of or relating to his claim for stock options damages because he will have the opportunity to do so in arbitration. On the other hand, the Court's denial of this Motion as to the stock options will prejudice Bitwarden inasmuch as it would have to engage in discovery (and potentially discovery disputes) regarding claims for damages that are currently in an inappropriate forum.

Finally, Bitwarden does not wish to inadvertently waive its right to have the issue of stock options damages, to the extent that Plaintiff is even entitled to any such damages, be decided in arbitration. *See Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200–01 (11th Cir 2011) (holding that a party seeking to compel arbitration waives that right if the party has acted inconsistently with the right to arbitration). Consistent with this and the other principles asserted throughout this Motion, courts in the Middle District have approved limited stays of discovery and case management obligations while preliminary dispositive motions are pending—these principles are equally applicable to the good cause showing required for entry of a protective order. *See, e.g., Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) ("While overall stays of discovery may be rarely granted, courts have held good cause to stay discovery exists wherein 'resolution of a preliminary motion may dispose of the entire action.'") (internal citations omitted). Additionally, this Court has previously granted a stay of discovery in a similarly postured case involving a Rule 12(b)(6) motion to dismiss. *See, e.g., Steven Ludwig v. Deutsche Bank USA Core Corp.*, Case No. 3:20-cv-910-MMH-MCR, at Docket No. 39 (M.D. Fla. Jan. 19, 2021). Therefore, good cause exists

14

for a protective order to prevent Plaintiff from propounding discovery related to or arising out of his claim for stock options damages in this Court.

## IV.   CONCLUSION

WHEREFORE, Defendant Bitwarden, Inc. respectfully requests that the Court grant this Motion and enter a Protective Order: (1) relieving Bitwarden of its obligation to respond to RFPs Nos. 12–15 and Interrogatories Nos. 9–13 above; (2) forbidding Plaintiff from propounding further discovery or otherwise inquiring into the topics of Series B Financing and stock options in this forum, as those matters are appropriately reserved for arbitration; (3) awarding Bitwarden its reasonable attorneys' fees and costs incurred in connection with the instant motion pursuant to Federal Rule of Civil Procedure 37(a)(5); and (4) any other such relief as the Court deems just and proper.

## LOCAL RULE 3.01(G) CERTIFICATE OF CONFERRAL

On April 16, 2025, counsel for the parties verbally conferred via teleconference as set forth herein, and were unable to resolve the issues now raised in this Motion. On May 7, 2025, the parties conferred again via email in an attempt to resolve this dispute but failed to reach a resolution. Therefore, Bitwarden represents that this Motion is opposed.

Dated this 9th day of May 2025.

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

By: */s/ Todd R. Dobry*
B. Tyler White
Florida Bar No. 038213
Tyler.White@jacksonlewis.com
Todd R. Dobry
Florida Bar No. 109081
Todd.Dobry@jacksonlewis.com
James D. McGuire
Florida Bar No. 1032198
James.McGuire@jacksonlewis.com
JacksonvilleDocketing@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of May 2025, a true and correct copy of the foregoing has been filed with the Court by using the CM/ECF system which will send a copy via e-mail to:

Jennifer M.Vasquez, Esq.
Cambell Trohn Tamayo & Aranda, P.A.
Post Office Box 2369
Lakeland, FL 33806-2369
j.vasquez@cttalaw.com
Counsel for Plaintiff

*/s/ Todd R. Dobry*
Attorney