# EXHIBIT B

**JAMS CASE REFERENCE NO. 5220005970**

**Scharf, Chad,**

     **Claimant,**

       **v.**

**Bitwarden, Inc.,**

     **Respondent.**

_____

**FACTS**

According to Mr. Mr. Sharf's federal complaint, he began working for Bitwarden in 2020, serving successfully as vice president for software engineering, earning a base salary with stock options.

In 2021, Bitwarden undertook a crusade to require all employees to declare their "pronouns" in the name of "inclusivity" with the objective of promoting, in Mr. Sharf's opinion, a dubious "gender ideology" social theory.

As a religious Catholic, he believed there are only two sexes and that gender can be neither changed, manipulated nor assigned, resulting in his refusal to specify his "pronoun," identifying his gender, rather, as "Assigned by God."

According to Mr. Sharf, Bitwarden ideologues objected to this declaration.

Mr. Sharf defended his "Assigned by God" designation in response to their interrogation by explaining to the Bitwarden hierarchy the "inclusivity" agenda, including the "pronoun" issue, violated his beliefs by fostering certain ideologies offensive to his religious beliefs.

They were deaf to his arguments, ultimately resulting in his dismissal for his unpopular religious beliefs, resulting in his filing of this action in federal court alleging employment termination by unlawful discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964, and other theories.

1

He seeks financial compensation and the reinstatement of his stock options.[1]

Bitwarden moved to send the case to arbitration under the parties' Stock Option Agreement, which provides in relevant part:

> Except as provided below, any dispute arising out of or *relating to* the Plan or this Stock option, this Agreement, or breach, termination or validity of the Plan, this Stock option or this Agreement, shall be finally settled by binding arbitration… (Emphasis added.)

According to Bitwarden, because Mr. Sharf's claim for damages is, in part, the loss of his stock options, it is self-evident that all the otherwise unrelated substantive theories of Mr. Sharf's suit "relate to" his stock option and, thus, fall under the Stock Option Agreement's arbitration clause.

The district court ordered the case to arbitration, reserving the issue of arbitrability for the arbitrator, who is also empowered to decide arbitrability under JAMS Comprehensive Rule 11.

Mr. Sharf, who has never agreed to arbitrate his employment claims, opposes being forced into arbitration against his will and seeks an order returning the case to federal court. He argues it is unreasonable to find his case falls under the arbitration provisions of the Stock Option Agreement because of the entirely collateral issue of recovering his stock option, only one of many remedies sought in his employment case.  Finding the stock option term, "relating to," as embracing all possible disputes, such a violation of Title VII where the option itself is only tangentially involved at best, defies a sensible reading of the Agreement.

## RULING

In light of all the information adduced in this case, the arbitrator has concluded no reasonable person could possibly have realized that his signing of the Stock Option Agreement, basically a benefit, would rise to bar him from seeking redress in a court of law at some unknown time, for an unknown future action, wherein he might happen to, incidentally, seek an option-related remedy. The arbitrator is convinced, under the facts of this case, that neither party contemplated such a result. It must be remembered, the relationship of the parties and the circumstances surrounding the Stock Option Agreement, essentially granting a privilege to a, presumably, valued employee, militate strongly against either party suspecting the

---

[1] The Stock Option Agreement specifies an employee loses his/her options if discharged for cause, section 1 (c)(ii).

employee, by signing the Agreement, was unwittingly waiving valuable legal rights in future matters only indirectly related to the Option itself.

> A contract must be construed with reference to the subject-matter, to the circumstances under which it was made, and to the evident intention of the parties, as made apparent by all the language used, keeping in view the said subject-matter and circumstances.'
> Shoemaker v. Acker, 116 Cal. 239, 243–244, 48 P. 62, 63.
>
> *Zimco Restaurants, Inc. v. Bartenders & Culinary Workers Union, Loc. 340, AFL-CIO,* 165 Cal. App. 2d 235, 239, 331 P.2d 789, 792 (1958).

The California Civil Code addresses this issue:

> A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.
>
> Civil Code § 1647
>
> However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.
>
> Civil Code § 1648

Accordingly, the arbitrator finds the substantive issues of the employment case, liability and damages, must be returned to federal district court for determination on the merits *except* for the singular, limited, discreet question of Mr. Sharf's right to restoration of the option in light of the result in the trial court, as the sole question of one's entitlement to an option is within a fair reading of the Stock option Agreement.

Therefore, the question of restoration of the option agreement will remain with the arbitrator.

December 1, 2024

_____
Hon. David H. Brickner (Ret.)
Arbitrator

3